### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff,**<br><br>v.<br><br>**ROBERT BRANDON MILLER**<br>**Defendant.** | **CRIMINAL ACTION NO. 23-135** |

### MEMORANDUM OPINION

**Rufe, J.**                                                                          **January 4, 2024**

Defendant Robert Brandon Miller, who has been convicted of two previous felonies and was under state parole supervision at the time of the alleged offense, was indicted for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Mr. Miller moves to dismiss the single-count indictment, arguing that § 922(g)(1) is unconstitutional (1) as applied to him, (2) on its face, and (3) because the statute is vague and inconsistent with the original meaning of the Commerce Clause.[1] For the reasons set forth herein, the Court will deny Defendant's Motion to Dismiss.

### I.    BACKGROUND

On March 30, 2023, Mr. Miller was indicted on one count of possession of a firearm by a felon in violation of 18 U.S.C.§ 922(g)(1) based on the recovery of a firearm during a traffic stop on July 29, 2022.[2] On July 14, 2023, Mr. Miller filed a Motion to Dismiss the Indictment[3] and a

---

[1] Def.'s Mot. Dismiss [Doc. No. 14].

[2] Indictment [Doc. No. 1].

[3] Def.'s Mot. Dismiss [Doc. No. 14].

Motion to Suppress Physical Evidence and Statements,[4] the latter of which will be addressed by separate Memorandum Opinion and Order.

On August 2, 2023, Mr. Miller submitted a memorandum letter brief in support of his Motion to Dismiss the Indictment, which outlined a new case from the Southern District of Mississippi.[5] On August 11, 2023, the government responded to both the Motion to Dismiss and the Motion to Suppress.[6] A motions hearing was held on December 18, 2023.[7] At the hearing, the parties rested on their submissions concerning the present motion.

## II.  LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[8] When addressing an as-applied challenge to an indictment, the Court must determine whether a statute, which is constitutional in certain instances, is "nonetheless unconstitutional as applied" to the defendant's specific conduct.[9] When addressing a facial challenge, the Court must determine whether a law is unconstitutional based on its text alone.[10] This is a high bar, as it requires the challenger to establish that "no set of circumstances exists under which the Act would be valid."[11]

---

[4] Def.'s Mot. Suppress [Doc. No. 15].

[5] Def.'s Letter Mem. Supp. Mot. Suppress [Doc. No. 20] (citing *United States v. Bullock*, No. 18-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023)).

[6] Gov't Resp. Opp'n Mot. Dismiss [Doc. No. 21]; Gov't Resp. Opp'n Mot. Suppress [Doc. No. 22].

[7] Notice of Hr'g [Doc. No. 29]; Minute Entry [Doc. No. 30].

[8] Fed. R Crim. P. 12(b)(1).

[9] *Spence v. Washington*, 418 U.S. 405, 414 (1974).

[10] *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988)).

[11] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

### III.   DISCUSSION

The Indictment charges Mr. Miller with violating 18 U.S.C. § 922(g)(1), which prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."[12] Mr. Miller puts forth three arguments: (1) § 922(g)(1) is unconstitutional as applied to Mr. Miller; (2) § 922(g)(1) is facially unconstitutional; and (3) § 922(g)(1) is vague and strays from the Commerce Clause's original public meaning. The Court addresses each argument in turn.

#### A.   Mr. Miller's As-Applied Challenge

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court rejected the two-step means-end scrutiny test that lower courts had been applying to Second Amendment cases.[13] Finding that the two-step approach was "one step too many," the Supreme Court held that the Second Amendment requires a text-and-history analysis.[14]

In light of *Bruen*, the Third Circuit Court of Appeals heard *Range v. Attorney General* en banc.[15] There, the Third Circuit decided that § 922(g)(1) could not constitutionally strip Range— a gun purchaser who had been convicted in 1995 of making a false statement on a food stamp application—of his Second Amendment rights because the government failed to demonstrate a

---

[12] 18 U.S.C. § 922(g).

[13] *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 18–19 (2022). Under the framework rejected by the Supreme Court in *Bruen*, courts of appeals would first conduct a historical study to determine whether the challenged law burdens protected conduct under the Second Amendment. Second, courts would apply means-end scrutiny to assess the particular restriction. *Id.*

[14] *Id.* at 19.

[15] *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023).

longstanding tradition of depriving people "like Range" of firearms.[16] The Third Circuit stated that the decision was a "narrow one" and unique to the nature of Range's previous conviction.[17]

In *Range*, the Third Circuit explained that under *Bruen*'s framework, courts must first determine "whether the text of the Second Amendment applies to a person and his proposed conduct"[18] and, "if it does, the government . . . 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'"[19]

> 1. *Whether the Text of the Second Amendment Applies to Mr. Miller and the Conduct Criminalized by § 922(g)(1)*

The threshold question is whether Mr. Miller is one of "the people" who have Second Amendment rights. The Third Circuit determined that "the people" in the text of the Second Amendment refers to all people, not only law-abiding citizens.[20] Both parties agree that, under *Range*, Mr. Miller is one of "the people" protected by the Second Amendment.[21]

The next step is to determine whether the Second Amendment's plain text covers Mr. Miller's conduct. If the conduct falls under the Second Amendment, then "the Constitution presumptively protects that conduct,"[22] and the government bears the burden to prove that its

---

[16] *Id.* at 106.

[17] *Id.*; *see also id.* at 110 (Ambro, J., concurring) (explaining that the *Range* majority opinion "speaks only to [Range's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like").

[18] *Id.* at 101 (citing *Bruen*, 597 U.S. at 31–33).

[19] *Range*, 69 F.4th at 101 (quoting *Bruen*, 597 U.S. at 19).

[20] *Range*, 69 F.4th at 101.

[21] The Third Circuit agreed with a statement of then-Judge Barrett "that 'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Id.* at 102 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)).

[22] *Range*, 69 F.4th at 103 (quotation marks omitted) (quoting *Bruen*, 597 U.S. at 17).

firearms regulation is "consistent with the Second Amendment's text and historical understanding."[23]

Mr. Miller argues that possession of a firearm, which is the conduct that is prohibited under § 922(g)(1), "falls squarely within the heartland of the Second Amendment . . . [and] 'the Constitution presumptively protects that conduct.'"[24] The government argues that Mr. Miller does not maintain that the gun was possessed for a lawful purpose—namely self-defense or hunting.[25] Rather, the government contends, the gun was recovered "in close proximity to illegal narcotics packaged for sale, [and] it appears the firearm was present to facilitate the illegal distribution of controlled substances."[26] The government further argues that the Second Amendment does not protect a defendant's possession of a firearm while on probation or serving a criminal sentence.[27] The Court need not determine whether the Second Amendment covers Mr. Miller's conduct because the government has met its burden to show that § 922(g)(1), as applied to Mr. Miller, is "consistent with the Nation's historical tradition of firearm regulation."[28]

> 2. *Whether 18 U.S.C. § 922(g)(1), as Applied to Mr. Miller, is Consistent with the Nation's Historical Tradition of Firearm Regulation*

The government carries the burden to demonstrate that § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[29] "Historical tradition can be established by

---

[23] *Bruen*, 597 U.S. at 26.

[24] Def.'s Mot. Dismiss [Doc. No. 14] at 6 (quoting *Range*, 69 F.4th at 103).

[25] Gov't Resp. Opp'n Mot. Dismiss [Doc. No. 21] at 9.

[26] *Id.*

[27] *Id.* at 10.

[28] *Bruen*, 597 U.S. at 24.

[29] *Id.*

analogical reasoning, which 'requires only that the government identify a well-established and representative historical analogue . . . .'"[30] The "central considerations" in deciding whether a modern regulation is "relevantly similar" to a historical analogue are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified . . . ."[31] The analogue need not be a "historical twin."[32]

Here, the government argues that "[t]here is clear historical support for restricting the possession of firearms by persons who, like the defendant, previously committed dangerous felonies."[33] The government cites to historical analogues from the 17th, 18th, and 19th centuries wherein the government restricted arms access to those who were determined to be "dangerous."[34] As even the Third Circuit in *Range* acknowledged, "Founding-era governments disarmed groups they distrusted,"[35] and the government argues that this tradition carried on after ratification of the Second Amendment and its precursors.[36] As the Supreme Court recognized in *Bruen*, in the mid-19th century, numerous states adopted statutes that required individuals "threatening to do harm" to "post bond before carrying weapons in public."[37] And as the *Bruen*

---

[30] *Range*, 69 F.4th at 103 (original emphasis omitted) (quoting *Bruen*, 597 U.S. at 30).

[31] *Bruen*, 597 U.S. at 29 (quotation marks, citations, and modifications omitted); *see also Range*, 69 F.4th at 103.

[32] *Bruen*, 597 U.S. at 30.

[33] Gov't Resp. Opp'n Mot. Dismiss [Doc. No. 21] at 12.

[34] *Id.* at 12–16.

[35] *Range*, 69 F.4th at 105.

[36] Gov't Resp. Opp'n Mot. Dismiss [Doc. No. 21] at 13–14.

[37] *Bruen*, 597 U.S. at 55; *see also* Gov't Resp. Opp'n Mot. Dismiss [Doc. No. 21] at 33 (citing Mass. Rev. Stat. ch. 134, § 16, 750 (1836); Me. Rev. Stat. ch. 169, § 16, 709 (1840); Mich. Rev. Stat. ch. 162, § 16, 162 (1846)).

Court further noted, if individuals were "reasonably accused of intending to injure another or breach the peace," they could be subject to firearm restrictions that did not apply to others.[38]

The Third Circuit found that Range and "his individual circumstances" did not justify stripping him of his right to bear arms because the government failed to meet its burden of establishing that disarming people "like Range" fits within our Nation's history of disarming those who pose a threat to the orderly functioning of society.[39] However, the fact that "Range does not conceivably pose such a threat says nothing about those who do."[40]

Mr. Miller has been convicted of two prior felonies and was under state parole supervision at the time of the alleged incident. He was arrested on October 24, 2013 and later pled guilty in Delaware County to conspiracy and robbery.[41] He was sentenced by the Delaware County Court of Common Pleas to 2.5 to 5 years in a state correctional facility and 5 years of state probation.[42] According to the government, the underlying facts involved an attempted robbery of a drug dealer at gunpoint, the victim and Mr. Miller fought over the gun, and Mr. Miller was shot during the struggle.[43] On September 1, 2016, after his release, Mr. Miller was arrested again in Delaware County for possession with intent to deliver.[44] He later pled

---

[38] *Bruen*, 597 U.S. at 57.

[39] *Range*, 69 F.4th at 105–06.

[40] *Id.* at 109–10, 112 (Ambro, J., concurring) ("Range committed a small-time offense. He did so with a pen to receive food stamps for his family. There is nothing that suggests he is a threat to society. He therefore stands apart from most other individuals subject to § 922(g)(1) whom we fear much like early Americans feared loyalists . . . .").

[41] Docket, *Commonwealth v. Miller*, No. CP-23-CR0000920-2014, at 1 (C.P. Del. Cnty.).

[42] *Id.* at 3.

[43] Gov't Resp. Opp'n Mot. Dismiss [Doc. No. 21] at 4.

[44] Docket, *Commonwealth v. Miller*, CP-23-CR-0007352-2016, at 1–2 (C.P. Del. Cnty.)

guilty.[45] The government represents that the second arrest involved a traffic stop which yielded a quantity of marijuana and cocaine packaged for sale.[46]

Mr. Miller's criminal history is vastly differently from Range, whose conviction stemmed from him signing onto his wife's inaccurate food stamps application over 25 years ago.[47] Range's only other criminal history related to traffic tickets and fishing without a license.[48] While the government's historical analogues were insufficient to limit Mr. Range's Second Amendment rights based on his single illegal, but non-dangerous, signature, there is a deep-rooted history of disarming people who may pose a danger to society. The government has met its burden of establishing numerous historical analogues to § 922(g)(1) and its application to Mr. Miller because of this Nation's history and tradition of disarming "those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society."[49]

Beyond the vast differences in Mr. Miller's and Mr. Range's criminal histories, the Supreme Court's recent Second Amendment decisions provide further assurance of the constitutionality of placing limitations on the Second Amendment. In *District of Columbia v. Heller*, the Court noted that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons" and such a prohibition is "presumptively lawful."[50] Two concurring opinions in *Bruen* reaffirmed the Supreme Court's

---

[45] *Id.* at 2; see also Gov't Resp. Opp'n Mot. Dismiss [Doc. No. 21] at 4.

[46] *Id.*

[47] The Supreme Court has previously acknowledged the dangerousness inherent in guns and drugs. *See, e.g.*, *Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination.").

[48] *Range*, 69 F.4th at 98.

[49] *Id.* at 110 (Ambro, J., concurring).

[50] *District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008).

statements in *Heller* that felon dispossession statutes are longstanding and lawful.[51] In *Bruen*, Justice Alito's concurrence noted that the decision does not "disturb[ ] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns."[52] Justice Kavanaugh's concurrence also emphasized that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."[53] Therefore, the government has met its burden of establishing that § 922(g)(1), as applied to Mr. Miller, is consistent with this Nation's historical tradition of firearm regulation.

### B.  Mr. Miller's Facial Challenge

Mr. Miller argues that § 922(g)(1) is unconstitutional on its face. A facial challenge requires a showing that § 922(g)(1) is unconstitutional in *all* of its applications.[54] Mr. Miller argues that there is no Founding-era history of disarming people convicted of felonies and, therefore, § 922(g)(1) is unconstitutional in *all* of its applications. According to Mr. Miller, "while *Bruen* may not demand a 'historical twin' for Section 922(g)(1) . . . the government has yet to find so much as a long-lost cousin."[55] However, Mr. Miller cannot demonstrate that § 922(g)(1) violates the Second Amendment as applied to him, which means that the statute is not unconstitutional in *all* of its applications.[56] Therefore, Mr. Miller's facial challenge fails.

---

[51] *Bruen*, 597 U.S. at 79–81 (Kavanaugh, J., concurring); *id.* at 71–79 (Alito, J., concurring).

[52] *Id.* at 72 (Alito, J., concurring) (citation omitted).

[53] *Id.* at 80–81 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 636); *see also United States v. Ames*, No. 23-178, 2023 WL 5538073, at *2 (E.D. Pa. Aug. 28, 2023) (quoting *Bruen* concurrences in denying a defendant's motion to dismiss the indictment).

[54] *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc) (citing *Salerno*, 481 U.S. at 745).

[55] Def.'s Mot. Dismiss [Doc. No. 14] at 8.

[56] *See Ames*, 2023 WL 5538073 at *3.

### C.  Mr. Miller's Vagueness and Commerce Clause Challenges

Lastly, Mr. Miller argues that § 922(g)(1) is unconstitutionally vague in light of *Range*. A criminal statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."[57] "[T]o be constitutional, criminal statutes need only give 'fair warning' that certain conduct is prohibited."[58]

According to Mr. Miller, there is no way for "ordinary people" with a past criminal conviction to have a "sure way to know" if possessing a gun will expose them to criminal punishment.[59] However, the plain text of the statute is clear. It prohibits those convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm or ammunition.[60] § 922(g)(1) provides unambiguous notice to all people who fall within this category. The fact "[t]hat the Second Amendment might then constitutionally preclude punishment in certain instances should not lead [the Court] to conclude otherwise."[61] If § 922(g)(1) violates other constitutional rules, those issues are best litigated in as-applied

---

[57] *United States v. Williams*, 553 U.S. 285, 304 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)).

[58] *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).

[59] Def.'s Mot. Dismiss [Doc. No. 14] at 9 (quotation marks omitted) (quoting *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019)). Mr. Miller also cites to Judge Krause's dissent in *Range*, which provides that "[u]nder the majority's 'like Range' test . . . offenders cannot possibly know in advance of a court's retroactive declaration whether possessing a firearm post-conviction is a constitutional entitlement or a federal felony. As interpreted today by the majority, § 922(g)(1) is rendered so vague as to be facially unconstitutional." *Range*, 69 F.4th at 133 (Krause, J. dissenting).

[60] 18 U.S.C. § 922(g)(1).

[61] *United States v. Ladson*, No. 23-161-1, 2023 WL 6810095, at *5 (E.D. Pa. Oct. 16, 2023); *see also Ames*, 2023 WL 5538073 at *3; *United States v. Johnson*, No. 23-77, 2023 WL 6321767, at *3 (E.D. Pa. Sept. 27, 2023); *United States v. Blackshear*, No. 23-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023); *United States v. Green*, No. 22-387, 2023 WL 6164407, at *2 (E.D. Pa. Sept. 21, 2023).

challenges.[62] Furthermore, a court must "consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"[63] This Court has already established that the statute is constitutional as applied to Mr. Miller. "[T]he mere fact that close cases can be envisioned [does not] render[ ] a statute vague," as "[c]lose cases can be imagined under virtually any statute."[64] Therefore, the Court holds § 922(g)(1) is not unconstitutionally vague.

Lastly, to preserve the argument, Mr. Miller contends that § 922(g)(1) is inconsistent with the Commerce Clause's original public meaning.[65] However, as Mr. Miller acknowledges, this argument is foreclosed by precedent.[66]

## IV.  CONCLUSION

For the foregoing reasons, Mr. Miller's Motion to Dismiss is denied. An order will be entered.

---

[62] *See Ames*, 2023 WL 5538073 at *3.

[63] *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) (quoting *Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982)).

[64] *Williams*, 553 U.S. at 305–06.

[65] Def.'s Mot. Dismiss [Doc. No. 14] at 10.

[66] *NLRB v. Jones & Laughlin Steep Corp.*, 301 U.S. 1 (1937); *see also United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001); *United States v. Shambry*, 392 F.3d 631, 634 (3d Cir. 2004); *United States v. Gateward*, 84 F.3d 670, 672 (3d Cir. 1996); *Range*, 69 F.4th at 108 (Porter, J., concurring).